EuffíN, C. J.
 

 It is needless to enquire,, whether there was evidence fo sustain a count for a
 
 quantum
 
 meruit, since there was no such count in the declaration, and the Court had, undoubtedly, the power to refuse permission to add it.
 

 It is likewise true, that, as the action is founded on a special agreement, whereby the defendant bound himself to pay a stipulated sum of money on the performance of a precedent act by the plaintiff, the latter cannot recover without shewing a performance of that act, or a sufficient excuse for its non-performance. His Honor was correct in holding, that the plaintiff had not shewn a compliance with his part of the contract, by performing the precise act to be done by him ; for he did not deliver John Ashcraft to the defendant in Wadesborough, and the sheriff, no doubt, had the right to retake his prisoner, and did retake him, before he was brought to him “in Wadesborough.”
 

 But the Court is, nevertheless, of opinion, that it was -not correct to nonsuit the plaintiff. Of the credibility of the testimony the jury are the judges ; and there was evidence tending to shew, and, if believed, showing that that the plaintiff was in the course and progress towards the performance of the condition on his part, and would have performed it literally according to its terms, if he had not been prevented by the act of the defendant himself. That is always sufficient; for he, who prevents the performance of a thing, of whieh he-is to have-the-benefit,-cannot insist on any ad
 
 *100
 
 vantage from its non-performance. In such a case the act cons’dered as done, as far as respects the rights to arise' upon its performance to him who was to perform it. An a-verment) therefore, in the declaration, that the plaintiff had retaken the prisoner and had him in his power and custody, with the intention to carry him to Wadesborough and there to deliver him to the defendant, and that he could have so carried and delivered him and would have done so, but that the defendant took the prisoner from the power and custody of the plaintiff, snd thereby hindered and prevented him from making the delivery, supported by due proof, would, in our opinion, entitle the plaintiff to recover. To hold otherwise is merely sticking to the letter, without regard to the substance, of the agreement, and would occasion the evasion of the clearest stipulation by tricks and subterfuge. The real object of this contract was to enable a sheriff to retake ar debtor who had escaped, and thus save himself from heavy liabilities; and he supposed that the plaintiff, either by his influence with his brother,-who was the debtor, orby other means, could bring about thatend — for which, if he could and would, the sheriff agreed to pay him a reward. But, in the agreement, a time and place of performance are specified, on which, indeed, the defendant has a right to insist, as a condition ¡but not so to insist on it, as to defeat the rights of the other party, notwithstanding the agreement has been substantially performed by the other party, and the defendant has had the same benefit from it, as if it had been a literal performance. Suppose the defendant had accepted his prisoner from the plaintiff at his home in the country, it cannot be disputed but that would be the same as a delivery in Wadesborough. Suppose that, learningthattheplaintiffwas bringing his broth-to town for the purpose of delivering him, the defendant had met them just out of town, and, as he had a right to do, had then taken the debtor into
 
 his
 
 own custody, the same .consequence must follow. It is the same thing in the events that happened, except that the evidence is not so plain and convincing, that the plaintiff had, in fact, the power over debtor, and, with the power, the will tp restore him to the
 
 *101
 
 imprisonment from which he had escaped. But as to the credit due to the evidence, or the inference from it as to the" purposes of the plaintiff — they fall to the province of the jury to be decided. We apprehend also, that there is nothing in the policy of the law, to forbid such a contract as this ; nor to impeach the right of the plaintiff under it, on the score, that he gave ease to the debtor. That is a question between the creditors and the sheriff; and the acts of the plaintiff would not have affected it at all. The plaintiff was not the defendant’s deputy, nor had from him any authority whatever; and, therefore, his acts did not induce any responsibility on the sheriff. The rights of these parties grow out of the stipulations of the agreement between them ; whereby the plaintiff undertakes, if he can, by his own authority or influence, to place his brother again in the power of the sheriff: and, upon his doing so within a time specified, the sheriff engages to pay him so much money. As between them, the law enforces no’diligence more speedy than that for which they contracted. If, indeed, the plaintiff would not deliver the prisoner before the sheriff was able, of himself, to take him, he would lose his bargain; because the sheriff does, certainly, not depart from his own right to retake him, and he might exercise it for his own security, provided only, that he did not thereby stop the plaintiff from fulfilling literally his part of the agreement, which he had fulfilled substantially.
 

 Per Curiam, Judgment reversed and
 
 venire de novo.